# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3007 |
| | § | |
| TEXAS MUTUAL INSURANCE | § | |
| COMPANY, | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Partial Summary Judgment ("Motion") [Doc. # 25] filed by Plaintiff Fair Isaac Corporation ("FIC"), seeking summary judgment on Defendant's counterclaims. Defendant Texas Mutual Insurance Company ("Texas Mutual") filed its response [Doc. # 33], and FIC filed a reply [Doc. # 47]. Based on the Court's review of the full record and the application of governing legal authorities, the Motion is granted in part and denied in part.

## I.   BACKGROUND

Plaintiff is a management solutions corporation, and Defendant is a workers' compensation insurance company. Both companies have assets valued in excess of one

billion dollars. In December 2003, Plaintiff and Defendant began negotiating a contract for Plaintiff's bill review software, known as SmartAdvisor.

In March 2004, the parties executed a Master Application Services Agreement (the "Contract"), pursuant to which Plaintiff would provide SmartAdvisor to Defendant for use in its business, and Defendant would pay Plaintiff for that use. FIC's Vice President of Financial Planning and Analysis, Daniel Chelew, signed the Contract on Plaintiff's behalf. Texas Mutual's President, Russell Oliver, signed on Defendant's behalf. Mr. Oliver is an attorney and was formerly Texas Mutual's General Counsel. The initial term of the Contract is four years, and neither party has sought to rescind the Contract.

Texas Mutual began using SmartAdvisor on a live, rather than a test, basis in November 2004. Texas Mutual alleges that SmartAdvisor caused a complete collapse of its medical bill review function and caused Texas Mutual to overpay bills by millions of dollars.

FIC filed this lawsuit in August 2005 alleging that Texas Mutual failed to pay the amounts due under the Contract. Texas Mutual counterclaimed, alleging that FIC made fraudulent representations before and after the execution of the Contract. FIC has moved for summary judgment on Texas Mutual's counterclaims. The motion has been fully briefed and is ripe for decision.

## II.    ANALYSIS

### A.    Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir.), *cert. denied*, 537 U.S. 824 (2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the nonmovant only when there is an actual controversy – "that is, when both parties

have submitted evidence of contradictory facts." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Freeman v. Texas Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).

If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* (quoting *Brenoettsy*, 158 F.3d at 911); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

### B.  Pre-Contract Counterclaims

Texas Mutual alleges in its counterclaim that FIC fraudulently induced it to enter into the Contract by falsely representing that SmartAdvisor was an existing product in

commercial use. The required elements of a fraudulent inducement claim under Texas law are:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*E.R. Dupuis Concrete Co. v. Penn Mutual Life Ins. Co.*, 137 S.W.3d 311, 319 (Tex. App. – Beaumont 2004, *no pet.*) (citing *Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

The Contract includes a merger clause that contains language that "[e]ach party represents and warrants to the other party that in entering into this [Contract] it has not relied upon any representations, promises or assurances from another party . . . not expressly contained in this [Contract]." *See* Contract, Ex. 1 to Stipulation [Doc. # 23], ¶ 10.16. Whether this disclaimer of reliance is binding is determined by the language of the contract and "the circumstances surrounding its formation." *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997).

In this case, the language of the Contract is clear and unambiguous. The parties both warrant that they have not relied on any representations from the other party that are not expressly included in the Contract itself. The language is contained in a merger

clause that provides that the Contract is the entire agreement between the parties and "supersedes . . . all other communications between the parties relating to [the subject matter of the Contract]." *See* Contract, ¶ 10.16.

The circumstances of the Contract's formation also weigh in favor of the conclusion that the disclaimer of reliance is binding. Both parties are sophisticated, knowledgeable business entities. Texas Mutual was represented by an attorney. It is undisputed that the "Contract was negotiated at arms' length, and Texas Mutual and Fair Isaac had comparable bargaining power during the negotiations and execution of the Contract." *See* Stipulation of the Parties [Doc. # 21], ¶ 2.

The Contract language and the undisputed circumstances surrounding the formation and execution of the Contract establish that the disclaimer of reliance clause is valid and binding.[1] Therefore, as a matter of law, Texas Mutual cannot establish the reliance element of its fraudulent inducement claim. *See Schlumberger*, 959 S.W.2d

---

[1] One Texas Court of Appeals has held that *Schlumberger* should be applied only to contracts that resolve a long-running dispute. *See Warehouse Associates Corporate Centre II, Inc. v. Celotex Corp.*, 192 S.W.3d 225, 234 (Tex. App. – Houston [14th Dist.] 2006, *pet. filed* June 15, 2006). This restrictive reading of *Schlumberger* has not, however, been applied by other Texas Courts of Appeals. *See, e.g., Playboy Enterprises, Inc. v. Editorial Caballero, S.A. de C.V.*, __ S.W.3d __, 2006 WL 1431221, * 3 (Tex. App. – Corpus Christi 2006); *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 871 (Tex. App. – Austin 2006). Significantly, the United States Court of Appeals for the Fifth Circuit has applied *Schlumberger* to an employment contract, finding that the merger clause and other contract language operate as a waiver of reliance and, therefore, bar the plaintiff's fraudulent inducement claim. *See Armstrong v. American Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003).

at 180.  FIC is entitled to summary judgment on Texas Mutual's pre-contract fraudulent inducement claim.[2]

### C. Post-Contract Counterclaims

Texas Mutual alleges that FIC engaged in fraud and negligent misrepresentation by falsely representing that SmartAdvisor was being used by other customers and, therefore, was ready for Texas Mutual to begin using in November 2004.  Texas Mutual alleges that it incurred damages because the SmartAdvisor system caused it to pay millions of dollars in workers' compensation claims that it otherwise would not have been required to pay.

FIC argues that it is entitled to summary judgment on these post-contract counterclaims because Texas Mutual's only claim is in contract and not in tort.  In determining whether the claims sound in contract or in tort, the Court uses a two-part test established by the Texas Supreme Court in *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).[3]  First, the Court looks to the source of the duty to act.  *See id.*; *Creel v. Houston Industries, Inc.*, 124 S.W.3d 742, 753 (Tex.

---

[2]   Texas Mutual also asserts a negligent misrepresentation counterclaim.  To the extent the counterclaim is based on ***pre-contract*** misrepresentations, the disclaimer of reliance clause similarly bars this counterclaim which also requires reliance.  *See Atlantic Lloyds Inc. Co. v. Butler*, 137 S.W.3d 199, 215 (Tex. App. – Houston [1st Dist.] 2004, *review denied*).

[3]   The United States Court of Appeals for the Fifth Circuit applied the *DeLanney* two-part test in *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama*, 315 F.3d 533, 538 (5th Cir. 2003).

App. – Houston [1st Dist.] 2003, *no pet.*); *Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 208 (Tex. App. – Dallas 2003, *review dismissed*). "Tort obligations are in general obligations that are imposed by law – apart from and independent of promises made . . .." *Id.* Second, the Court considers the nature of the remedy sought by the complaining party. *DeLanney*, 809 S.W.2d at 494-95; *Creel*, 124 S.W.3d at 753; *Anthony Equip.*, 115 S.W.3d at 208. When the only injury is the loss of the subject of the contract, the claimant has only a contract claim. *See id.*

Texas Mutual in its post-contract counterclaims is not complaining that FIC failed to comply with its obligations under the Contract. Instead, Texas Mutual is complaining about false representations regarding the readiness of the SmartAdvisor system for use beginning in November 2004, a subject not covered by the Contract. FIC had an independent duty, created by Texas common law and not by the contract, not to engage in intentional fraud. *See, e.g., Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998); *MCN Energy Enterprises, Inc. v. Omagro de Colombia, L.D.C.*, 98 S.W.3d 766, 772 (Tex. App. – Fort Worth 2003, *review denied*) (citing *Shell Oil Prods. Co. v. Main Street Ventures, L.L.C.*, 90 S.W.3d 375, 382 (Tex. App. – Dallas 2002, *pet. denied*)); *Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 717 (S.D. Tex. 2000).

With reference to the second inquiry under the *DeLanney* two-part test, the damages described by Texas Mutual as resulting from the post-contract fraud are not the same damages that would be recoverable under the contract. If FIC had simply delayed the date on which Texas Mutual could begin using SmartAdvisor, Texas Mutual would not have incurred the damages alleged in the post-contract counterclaims because it could have continued using its prior system until SmartAdvisor was genuinely ready. Instead, as alleged by Texas Mutual, FIC fraudulently represented that the SmartAdvisor system was ready for use and, as a result of that fraud, Texas Mutual paid claims it would not have otherwise paid.

Texas Mutual's counterclaims that are based on FIC's alleged misrepresentation that the SmartAdvisor system was ready for use beginning in November 2004 do not arise out of FIC's obligations under the Contract and do not involve breach of contract damages. As a result, the post-contract counterclaims are not based in contract rather than in tort, and summary judgment is denied.

### III. CONCLUSION AND ORDER

The clear, unambiguous contract language, agreed upon by sophisticated business entities represented by competent counsel, constitutes a waiver of reliance. FIC, therefore, is entitled to summary judgment on Texas Mutual's pre-contract counterclaims because there cannot be justifiable reliance on any representations

allegedly made by FIC. Texas Mutual's post-contract counterclaims are based on alleged misrepresentations of existing fact on an issue not governed by the Contract. The post-contract counterclaims, therefore, are properly asserted as fraud-based claims rather than contract claims and are not subject to summary judgment. Accordingly, it is hereby

**ORDERED** that Fair Isaac Corporation's Motion for Partial Summary Judgment [Doc. # 25] is **GRANTED** as to the pre-contract claims and **DENIED** as to the post-contract claims.

SIGNED at Houston, Texas this **17th** day of **July, 2006.**

*[signature]*
Nancy F. Atlas
United States District Judge