IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3007 |
| | § | |
| TEXAS MUTUAL INSURANCE | § | |
| COMPANY, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This case is before the Court for resolution of a discovery dispute regarding claims of privilege asserted by Defendant Texas Mutual Insurance Company ("Texas Mutual"). Plaintiff Fair Isaac Corporation ("FIC") has challenged Texas Mutual's privilege claims, and the Court has reviewed the parties' briefing, the exhibits to the parties' briefing, and the subject documents. Based on this review and the application of governing legal authorities, the Court **sustains** the privilege claims as to the documents still in dispute.

**I.     BACKGROUND**

Plaintiff is a management solutions corporation, and Defendant is a workers' compensation insurance company. In November 2004, Texas Mutual began using FIC's bill review software, known as SmartAdvisor. Texas Mutual alleges that

SmartAdvisor caused a complete collapse of its medical bill review function and caused Texas Mutual to overpay bills by millions of dollars.

Very soon thereafter, Texas Mutual anticipated that the SmartAdvisor failure could result in potential administrative fines, litigation against Texas Mutual by health care providers, and/or litigation with FIC. In January 2005, Texas Mutual's General Counsel, Mary Nichols, directed Elliott Flood to conduct a special investigation into the SmartAdvisor situation as it related to these three areas of potential litigation.[1] At that time, it was anticipated that the litigation with FIC would be contractual in nature.

When the results of the January 2005 investigation indicated to Texas Mutual that FIC had misrepresented the history and current status of the SmartAdvisor system, Nichols in March 2005 requested that Ron Wright, the Chief Operations Officer ("COO") for Texas Mutual, conduct a follow-up investigation into that aspect of the situation and the potential for fraud and misrepresentation litigation against FIC.

During discovery, FIC requested documents from Texas Mutual, who claimed that the documents were protected by the attorney-client and/or work product privilege. The parties engaged in further discussions between themselves and with the Court, and

---

[1] Flood is an attorney who had previously worked for Ms. Nichols in the General Counsel's office. In January 2005, he was working as the Director of the Internal Audit Division of Texas Mutual.

they were able to narrow their dispute to 45 documents.[2] The Court rules on these remaining 45 documents as follows.

## II. APPLICABLE LEGAL STANDARDS

Texas Mutual asserts either the attorney-client privilege or the work product privilege as to all 45 remaining documents and, as to most of the documents, asserts that both privileges apply. "A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). In support of its privilege assertions, Texas Mutual has submitted affidavits by the persons who wrote the challenged documents and has submitted the documents for *in camera* review.

### A. Attorney-Client Privilege

The attorney-client privilege exists to protect both "the giving of professional advice [and] the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The privilege protects from disclosure confidential communications between a client and his attorney "made for the purpose of facilitating the rendition of professional legal services to the client . . .." *International Ins. Co. V. RSR* Corp., 426 F.3d 291, 299 (5th

---

[2] The documents were provided to the Court for *in camera* review in a binder with Tabs 1-46. Texas Mutual's assertion of privilege as to the document at Tab 31, however, is no longer challenged.

Cir. 2005) (quoting TEX. R. EVID. 503(b)).[3] "A communication is only "confidential" for the purposes of the attorney-client privilege if it is not intended to be disclosed to a third party." *Id.* at 299 n. 27 (citing TEX. R. EVID. 503(a)(5)).

The attorney-client privilege protects confidential communications made between "representatives of the client" where the communications are made "for the purpose of facilitating the rendition of professional legal services." *See* TEX. R. EVID. 503(b)(1)(D). A "representative of the client" is defined to include persons "having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client" and "any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2). The attorney-client privilege covers communications made by corporate employees concerning matters pertinent to their job tasks if the information is sought by the corporation's attorney in order to formulate and render legal advice to the corporation. *See Upjohn Co.*, 449 U.S. at 394-95.

Under Texas law, the "subject-matter" test applies to extend the attorney-client privilege to a broad range of communications, "including those made by individuals

---

[3] Texas law applies to the claims of attorney-client privilege in this civil action. *See* FED. R. EVID. 501.

outside the corporation's control group." *In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003). "The subject matter test is met where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 225 n. 3 (Tex. 2004) (internal quotations and citations omitted).

The attorney-client privilege also applies to notes that are not themselves communications "if disclosure would reveal the substance of any confidential communications between the attorney and client that were made in the course of seeking or giving legal advice." *Robinson v. Texas Auto. Dealers Ass'n.*, 214 F.R.D. 432, 440 (E.D. Tex. 2003), *vacated to the extent district court ordered production of certain documents*, 2003 WL 21911333 (5th Cir., July 25, 2003); *see also Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134-35 (E.D. Tex. 2003) (holding that attorney-client privilege applies to "third parties who assist an attorney in rendering legal advice" and to "documents produced as a result of those communications").

**B.**     **Work-Product Privilege**

"The work product privilege applies to documents 'prepared in anticipation of litigation.'" *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting FED. R. CIV. P. 26(b)(3)). The privilege can apply where litigation is not imminent, "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.*

If documents qualify for the work product privilege, they may still be discoverable if the "party seeking discovery has substantial need of the materials [and] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *See* FED. R. CIV. P. 26(b)(3).

**III.   ANALYSIS OF DISPUTED DOCUMENTS**

The record shows that FIC provided information to Texas Mutual on December 8, 2004, indicating that thousands of bills would be processed in violation of the applicable Texas regulations. *See* Declaration of Lisa Corless, Exh. D to Texas Mutual's Response [Doc. # 60], ¶ 4. Texas Mutual believed that the failure of the SmartAdvisor system could result in "massive regulatory penalties and litigation." *See id.* In order to evaluate the potential for fines and litigation involving both health care providers and FIC, Texas Mutual's General Counsel, Mary Nichols, determined that she needed additional information. She began a special investigation on January 27,

2005, assigning Elliott Flood, an attorney who formerly worked for her in the Office of General Counsel, to lead the investigation. The Court finds that the attorney-client privilege protects confidential communications between Texas Mutual employees and Nichols and/or Flood that were made for the purpose of facilitating the rendition of professional legal services to Texas Mutual. The documents at Tabs 1,[4] 2, 4-11, 13, 15-16, 20, 30, 32-36[5] and 43[6] are clearly protected by the attorney-client privilege.

As part of the January 2005 investigation, and in order to provide Nichols with information to enable her to render informed professional legal services to Texas Mutual, a number of employees were interviewed. Documents regarding those interviews, both handwritten and typed, are protected by the attorney-client privilege. These documents are located at Tabs 12, 30, and 38-41. Similarly, the confidential communications among the representatives of Texas Mutual who were directed to conduct the interviews for Nichols regarding which employees to interview and what

---

[4] The email at Tab 1 was sent to Toni Toliver, an attorney in the Office of the General Counsel.

[5] The document at Tab 34 includes an email to Mary Nichols regarding the FIC situation, but also includes an email from Terry Buchheit. Although the Buchheit email is not protected by the attorney-client privilege, it need not be produced because it simply identifies a typographical error and is neither relevant to any issue in this lawsuit nor likely to lead to admissible evidence.

[6] The draft at Tab 43 was sent to the Legal Team as a whole rather than to one specific individual.

questions to ask are protected by the attorney-client privilege, as are notes of those communications. These documents include those at Tabs 18, 19, and 28.

The January 2005 investigation involved potential litigation regarding administrative fines, as well as litigation with FIC and with health care providers who were not paid in a timely manner. A subsequent investigation, initiated by Nichols and directed by COO Wright focused on the anticipated litigation with FIC. An important part of that investigation was to obtain damages information on which Nichols could base informed legal advice to Texas Mutual. The documents reflecting the confidential communications of those damages analyses, contained at Tabs 1-27 and Tab 44, were provided to Nichols and are protected by the attorney-client privilege.[7] Similarly, the handwritten notes at Tab 46 reflect a meeting between Corless and Wright regarding damages information for Nichols.

At times during the investigations, issues were discussed at Texas Mutual and were assigned to the legal department for review and action. The description of these issues, redacted from the lists of "Action Items" at Tabs 14 and 17, are within the attorney-client privilege.

Tab 45 contains notes handwritten by Lisa Corless regarding what information Nichols wanted for biweekly meetings. Because the document reflects Nichols's

---

[7]   *See, e.g.,* Declaration of Lisa Corless, Exh. D to Response [Doc. # 60], ¶ 23.

instructions regarding what information she needed, it is protected by the attorney-client privilege.

The document at Tab 3 is an email from Kathleen Haden to her supervisor describing work she is doing to gather information for Nichols. Haden was originally hired as a paralegal and assists in-house and outside counsel with litigation matters. *See* Declaration of Kathleen Haden, Exh. I to Response [Doc. # 60], ¶¶ 2-3. To the extent the document contains a confidential communication regarding information to be provided to Nichols, it is protected by the attorney-client privilege. To the extent the document describes other work Haden is performing on unrelated matters, it is neither relevant to any issue in the case nor likely to lead to the discovery of admissible evidence. As a result, Texas Mutual is not required to produce the document at Tab 3.

The documents at Tabs 37 and 42 are drafts of an email sent by Bill McLellan, a Senior Vice President at Texas Mutual, to Tara Ambrose at FIC. Because the documents at Tab 34 reflect that drafts of the email to Ambrose were being sent to Nichols for her review and approval, all three documents are protected by the attorney-client privilege.[8]

---

[8] Additionally, the draft at Tab 37 is a "test" copy of the email to Ambrose at FIC. Apparently, McLellan sent the "test" email to himself shortly before he sent it to Ambrose that same day. Consequently, it need not be produced because it is neither relevant to any issue in this litigation nor likely to lead to the discovery of admissible evidence.

The documents that are discussed above as being protected by the attorney-client privilege also reflect that they were created in anticipation of litigation. The Court rejects FIC's argument that the work product privilege cannot apply to documents created before Texas Mutual informed FIC on March 24, 2005, that it was considering litigation against FIC. As early as December 8, 2004, Texas Mutual anticipated litigation with its regulators, with its health care providers, and/or with FIC. As a result, these documents would also be protected by the work product privilege.

Texas Mutual asserts only the work product privilege as to the handwritten notes at Tab 29. These are notes handwritten by Julie Turner, a Medical Audit Team Leader for Texas Mutual regarding a meeting on March 23, 2005. The document reflects clearly that it was created in anticipation of litigation with FIC and, therefore, it is protected by the work product privilege.

FIC has failed to show that it has a substantial need for these 45 documents and that it is unable without undue hardship to obtain the substantial equivalent by other means. As a result, Texas Mutual does not need to produce any of the 45 disputed documents.

## IV.   **CONCLUSION AND ORDER**

Based on the foregoing, it is hereby

**ORDERED** that Texas Mutual's privilege claims as discussed herein are **SUSTAINED**.

SIGNED at Houston, Texas this **30th** day of **November, 2006.**

Nancy F. Atlas
United States District Judge